UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BRUCE E. FOSTER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 1:21-cv-02158-JPH-MKK |
| | ) |
| DENNIS REAGLE, | ) |
| | ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS**

Bruce Foster was convicted of murder and found to be a habitual offender in an Indiana state court. In this case, he seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the reasons discussed below, Mr. Foster's petition for a writ of habeas corpus is **denied**, and a certificate of appealability will not issue.

**I.
Background**

Federal habeas review requires the Court to "presume that the state court's factual determinations are correct unless the petitioner rebuts the presumption by clear and convincing evidence." *Perez-Gonzalez v. Lashbrook*, 904 F.3d 557, 562 (7th Cir. 2018); *see* 28 U.S.C. § 2254(e)(1). On direct appeal, the Indiana Court of Appeals summarized the relevant facts and procedural history as follows:

> On the morning of June 7, 2011, Holder drove her daughter Anastasia ("Anna") to school. At approximately 9:30 to 10:30 a.m., neighbor A.J. Strole, who knew Foster, witnessed him standing on a balcony and attempting to "jimmy" a second-story window to Holder's apartment with a wooden-handled knife. Tr. p. 95. Foster

and Holder had been in a romantic relationship but were apparently no longer involved. When Holder arrived home, Foster dropped down from the balcony and approached Holder as she was walking up to her apartment's door. Foster, who was visibly upset, said, "you dumbass bitch you got me out here doing this stupid ass shit" just as Holder opened the door. Tr. p. 100. Holder gave a large backpack to Foster, who opened it and said, "no bitch this ain't all my shit[,] barged his way in the door[,] turned[,] and locked the door[.]" Tr. p. 101. Strole then heard six to eight "thumps" against the wall. Tr. p. 101. Foster emerged and drove off in Holder's car.

Anna arrived home from school around 3:00 p.m. Anna had forgotten her key and had tried, in vain, to contact Holder via text message and telephone. Anna called her grandmother Sherry Runyon, who soon arrived with her sister. The trio went shopping and while shopping, Runyon received a telephone call from her husband that police had found Holder's purse in Cascades Park at approximately 3:00 p.m. The trio returned to Holder's apartment and secured a key from the manager's office. When Anna unlocked the door, the door would barely open, and, upon looking inside, she saw her mother's body and screamed. Holder had been stabbed seven times in the chest with a single-edged knife, causing her death, in addition to ten times in the extremities. The forensic pathologist determined that Holder died no later than two hours after 10:00 a.m. On June 8, 2011, Foster called Detective William Jeffers of the Bloomington Police Department, and Detective Jeffers recorded the conversation. On June 15, 2011, a knife was found in Cascades Park, and swabs taken from the knife were determined to contain Holder's DNA.

Also on June 8, 2011, the State charged Foster with murder and Class D felony auto theft and alleged that he is a habitual offender. On June 18, 2012, a jury found Foster guilty of auto theft but failed to reach a verdict on the murder count. A second jury trial was held on the murder and habitual offender counts. During the second trial, the State presented evidence based on Foster's mobile telephone records indicating activity on the morning of June 7, 2011, at or near the areas in Cascade Park where Holder's purse and the knife were found. On December 10, 2012, the second jury found Foster guilty of murder and of being a habitual offender. The trial court sentenced Foster to sixty-five years of incarceration for murder (enhanced thirty years by virtue of his habitual offender status) and ordered the sentence to be served consecutively to his three-year sentence for auto theft.

*Foster v. State*, 5 N.E.3d 814, 2014 WL 683993, *1-2 (Ind. Ct. App. 2014) (*Foster I*) (available in the record at dkt. 8-6).

The Indiana Court of Appeals affirmed Mr. Foster's conviction and habitual offender status, and the Indiana Supreme Court denied transfer. Dkt. 8-2 at 7; dkt. 8-6. Mr. Foster then filed a pro se petition for post-conviction relief, which was denied. The Indiana Court of Appeals affirmed the post-conviction court, and the Indiana Supreme Court denied his petition to transfer. Dkt. 8-11 at 6; dkt. 8-15.

Mr. Foster filed his petition for a writ of habeas corpus in this case on August 2, 2021. Dkt. 1. Mr. Foster argues that there was insufficient evidence to convict him, that the trial court made evidentiary errors, and that both his trial and appellate counsel were ineffective because they failed to argue that there was insufficient evidence to support his habitual offender designation.

## II.
## Applicable Law

A federal court may grant habeas relief only if the petitioner demonstrates that he is in custody "in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2254(a). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") directs how the Court must consider petitions for habeas relief under § 2254. "In considering habeas corpus petitions challenging state court convictions, [the Court's] review is governed (and greatly limited) by AEDPA." *Dassey v. Dittmann*, 877 F.3d 297, 301 (7th Cir. 2017) (en banc) (citation and quotation marks omitted). "The standards in 28 U.S.C. § 2254(d) were designed to prevent federal habeas retrials and to ensure that state-court convictions are

3

given effect to the extent possible under law." *Id.* (citation and quotation marks omitted).

A federal habeas court cannot grant relief unless the state court's adjudication of a federal claim on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey*, 877 F.3d at 302. "Deciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of fact requires the federal habeas court to train its attention on the particular reasons—both legal and factual— why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision[.]" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018) (citation and quotation marks omitted). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id.* "In that case, a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id.*

"For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 102. "The issue is not whether federal judges agree with the state court decision or even whether the state court decision was correct. The issue is whether the decision was unreasonably wrong under an objective standard." *Dassey*, 877 F.3d at 302. "Put another way, [the Court] ask[s] whether the state court decision 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103). "The bounds of a reasonable application depend on the nature of the relevant rule. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Schmidt v. Foster*, 911 F.3d 469, 477 (7th Cir. 2018) (en banc) (citation and quotation marks omitted).

### III.
### Discussion

**A. Claim based appellate counsel's performance**

Mr. Foster claims that his appellate counsel failed to argue that his habitual offender designation was not supported by sufficient evidence. Dkt. 1 at 25–29. The State argues that this claim is procedurally defaulted. Dkt. 8 at 13–14. Procedural default "occurs when a claim could have been but was not

5

presented to the state court and cannot, at the time that the federal court reviews the habeas petition, be presented to the state court." *Resnover v. Pearson*, 965 F.2d 1453, 1458 (7th Cir. 1992). "[S]uch default can be excused if [the petitioner] can demonstrate cause for the default and prejudice, or that the failure to consider his claims would constitute a miscarriage of justice." *Martin v. Zatecky*, 749 F. App'x 463, 464 (7th Cir. 2019).

Here, Mr. Foster failed to fairly present this claim to the Indiana Court of Appeals or Indiana Supreme Court. Dkt. 8-12; dkt. 8-16. His petition does not argue that he had cause for not presenting the claim at the state level, that he has been prejudiced, or that the Court's failure to consider the claim would constitute a miscarriage of justice. And Mr. Foster did not file a reply to the response to the order to show cause. Therefore, Mr. Foster's claim that his appellate counsel failed to argue that his habitual offender designation was not supported by sufficient evidence is procedurally defaulted.

### B. Claims based on the admission of cell phone records and videorecording of Mr. Foster's interview with the police

Mr. Foster claims that the trial court erred by admitting certain evidence in violation of the Fourteenth Amendment—including cell phone records and testimony related to them and an unredacted copy of his statement to the police—and by allowing the jury to have his recorded statements during their deliberations.

"Errors of state law in and of themselves are not cognizable on habeas review." *Samuel v. Frank*, 525 F.3d 566, 574 (7th Cir. 2008) (cleaned up). "Because a state trial court's evidentiary rulings . . . turn on state law, these are

6

matters that are usually beyond the scope of federal habeas review." *Perruquet v. Briley*, 390 F.3d 505, 511 (7th Cir. 2004). "However, a state defendant does have a Fourteenth Amendment due process right to a fundamentally fair trial." *Id.* In the federal habeas context, allegedly erroneous evidentiary rulings implicate the right to a fundamentally fair trial only when such errors "produce[] a significant likelihood that an innocent person has been convicted." *Anderson v. Sterns*, 243 F.3d 1049, 1053 (7th Cir. 2001) (citation and quotation marks omitted). Therefore, to sustain a due process claim based on evidentiary rulings, the petitioner must "draw[] enough of a connection between his right to due process and the trial court's . . . evidentiary . . . errors to render his claim cognizable on habeas review." *Perruquet*, 390 F.3d at 512. "To consider the significance of the alleged errors, a court must examine the entire record, paying particular attention to the nature and number of alleged errors committed; their interrelationship, if any, and their combined effect; how the trial court dealt with the errors, including the efficacy of any remedial measures; and the strength of the prosecution's case." *Anderson*, 243 F.3d at 1053.

Here, Mr. Foster claims that the state trial court erred by admitting evidence relating to cell phone records and his statement to the police. Cell phone records admitted at trial indicated that Mr. Foster's cell phone was active on the day of the murder near where the victim's purse and the knife used in the stabbing were found. At trial, Mr. Foster objected to the records being admitted on the basis that the State's witness—an AT&T engineer—could not personally verify that the records were accurate. Dkt. 1 at 13-14. On direct appeal, the state

7

court held that the AT&T engineer's testimony was sufficient foundation to authenticate the cell phone records and admit them as business records:

> AT&T engineer and network performance team manager David Salyer indicated that it is the regular practice for AT&T to compile telephone usage data and that he understood the method by which the data are collected and maintained. Salyers testified that every time an AT&T mobile telephone customer uses his telephone, the device will register on one of AT&T's cellular towers, and a record of that activity will automatically be complied in a nation-side database. Moreover, Salyers explained how to interpret the records, how they are kept, how the information is stored, what the various terms of art in the records meant, how AT&T uses the information, and how cellular towers and zones work. In summary, Salyers's testimony clearly indicated that he possessed the required functional knowledge of how AT&T's mobile telephone records were generated.

*Foster*, 2014 WL 683993 at *3-4; Trial Transcript at 239-46 (in the record at dkt. 10 (manual filing)).

Mr. Foster also alleged that the trial court erred when it admitted an unredacted video of his statement to police. The trial court gave a cautionary, limiting instruction to the jury before admitting the video evidence:

> [L]adies and gentlemen, you are about to see and to listen to an interview of Defendant by Detective Joe Henry of the Bloomington Police Department. During the interview you will hear Defendant say he was in jail shortly before the time period in question, that he was scheduled to appear for a change of plea hearing, and, at another point, that he smoked marijuana. You are advised that such statements are being admitted for the sole purpose of allowing Defendant's statements to be seen and heard in context. Defendant was not in jail as a result of any charge involving violence or a result of any matter related to the allegations in this case. You are instructed that whether Defendant was in jail or facing criminal charges, whether he failed to appear for a scheduled hearing, or whether he smoked marijuana at some point are all matters which are irrelevant and immaterial to the allegations made against him in this case. When you retire to deliberate you shall accord no weight to such matters in determining whether the State has or has not proven the guilt of the defendant beyond a reasonable doubt.

8

Trial Transcript at 564–65. On direct appeal, the state court held that the trial court did not abuse its discretion in admitting the unredacted statement, and that to the extent it was error, it was harmless. *Foster*, 2014 WL 683993 at *2-3. The admissions that Mr. Foster smoked marijuana and had recently been in jail for a non-violent offense were unrelated to the charges in this case and the trial court appropriately admonished the jury to disregard them. *Id*. And because it was not error to admit the unredacted video, it was not error to allow the jury to have it during their deliberations. *Id*. at *5.

Mr. Foster has not shown that admission of the cell phone records and Mr. Foster's unredacted statement to police, whether considered individually or together, implicated his right to a fundamentally fair trial. As the Court of Appeals explained, a witness saw Mr. Foster attempting to break into the victim's apartment with a knife and then arguing with the victim as the two entered her apartment on the morning she was stabbed to death. *Foster I*, 2014 WL 683993 at *2 (citations omitted). While the evidence that Mr. Foster challenges further supported the jury's verdict, the remaining evidence shows that there is not a significant chance that an innocent person was convicted. *See Anderson*, 243 F.3d at 1053.

Mr. Foster has failed to show "enough of a connection between his right to due process and [any] . . . evidentiary . . . errors to render his claim cognizable on habeas review." *Perruquet*, 390 F.3d at 512. Therefore, he is not entitled to relief on these claims.

9

### C. Claim based on sufficiency of the evidence

Mr. Foster next claims that the evidence admitted at trial was insufficient to support his conviction. Evidence is constitutionally sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original). "[H]abeas reviews of *Jackson* claims are subject to two levels of judicial deference creating a high bar: first, the state appellate court determines whether any rational trier of fact could have found the evidence sufficient; second, a federal court may only overturn the appellate court's finding of sufficient evidence if it was objectively unreasonable." *Saxon v. Lashbrook*, 873 F.3d 982, 987–88 (7th Cir. 2017). "Federal review of these claims . . . turns on whether the state court provided fair process and engaged in reasoned, good-faith decisionmaking when applying *Jackson*'s 'no rational trier of fact' test." *Gomez v. Acevedo*, 106 F.3d 192, 199 (7th Cir. 1999).

In addressing this challenge to the sufficiency of the evidence, the Indiana Court of Appeals correctly articulated the *Jackson* standard:

> When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the verdict. It is the factfinder's role to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. We consider conflicting evidence in the light most favorable to the trial court's ruling. We affirm the conviction unless no reasonable fact-finder could find that the elements of the crime were proven beyond a reasonable doubt.

*Foster I*, 2014 WL 683993 at *2 (citations omitted). It then reviewed the evidence against Mr. Foster including that a witness saw him attempting to break into the victim's apartment with a knife and then arguing with the victim as the two entered her apartment on the morning she was stabbed to death. The Indiana Court of Appeals "had little trouble" concluding that there was sufficient evidence to support Mr. Foster's conviction. *Id.* The record demonstrates that the state court applied *Jackson* reasonably and in good faith. Mr. Foster is not entitled to relief. *Wilson*, 138 S. Ct. at 1191-92.

### D. Claim based on ineffective assistance of trial counsel

Mr. Foster next claims that his trial counsel was ineffective when counsel failed to challenge the sufficiency of the evidence in support of his habitual offender designation. A criminal defendant has a right under the Sixth Amendment to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). For a petitioner to establish that "counsel's assistance was so defective as to require reversal," he must make two showings: (1) that counsel's performance "fell below an objective standard of reasonableness" and (2) "that the deficient performance prejudiced the defense." *Id.* at 687–88. "This inquiry into a lawyer's performance and its effects turns on the facts of the particular case, which must be viewed as of the time of counsel's conduct." *Laux v. Zatecky*, 890 F.3d 666, 673–74 (7th Cir. 2018) (citation and quotation marks omitted).

"As for the performance prong, because it is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of

hindsight, *Strickland* directs courts to adopt a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 674 (citation and quotation marks omitted). "The prejudice prong requires the defendant or petitioner to 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Laux*, 890 F.3d at 674 (quoting *Strickland*, 466 U.S. at 694).

The Indiana Court of Appeals correctly stated the *Strickland* standard. *Foster v. State*, 168 N.E.3d 1078, 2021 WL 1748054, *4 (Ind. Ct. App. 2021) (*Foster II*) (available in the record at dkt. 8-15). The court then determined that counsel did not perform deficiently, and that Mr. Foster had misunderstood Indiana's habitual offender statute:

> Foster first asserts that his trial counsel ineffectively failed to challenge the sufficiency of the State's evidence in support of the habitual offender allegation. Specifically, Foster asserts that the records of his prior convictions were not properly certified and, further, that they did not sufficiently identify him as they did not include photographs or fingerprints of him. But Foster's arguments are misplaced. The records were certified, although his trial counsel strategically chose to have copies published to the jury that did not include those certifications, and the records unambiguously identified Foster by name, date of birth, and social security number, which is sufficient.
>
> Nonetheless, Foster also argues that his trial counsel failed to object to the State's submission of two overlapping offenses in support of the habitual offender allegation. At the time of his offenses, Indiana Code Section 35-5-2-8(c) required the State to support a habitual offender allegation with a showing of two prior, unrelated felony convictions, which required a showing that the second offense "was committed after sentencing" for the first offense and that the instant offense "was committed after sentencing" for the second offense.
>
> The State offered evidence of five prior offenses to show Foster was a habitual offender. Foster asserts that the post-conviction court

12

> correctly found that two of those offenses were overlapping such that one had been committed prior to sentencing on the other, which reduced the number of available prior offenses from five to four. He then asserts on appeal that two other offenses are also overlapping as he "was charged" for one offense "while serving time" on the other. Appellant's Br. at 14-15.
>
> But Foster's reading of the statute is not correct. Even if the State charged Foster for one offense while he was "serving time" on another, those facts do not implicate the statute so long as the latter offense was committed after the prior offense's sentencing date, which Foster does not address on appeal. And, in any event, he acknowledges that, if we were to accept his argument here, it would still be "true that Foster has at least two [other] prior unrelated felonies ...." *Id.* at 16. We therefore affirm the post-conviction court's denial of his petition with respect to counsel's performance during the habitual offender stage of the trial.

*Id.* at *4–5.

The state court's determination that Mr. Foster's trial counsel did not perform deficiently turned on its interpretation of Indiana's habitual offender statute. The state court rejected Mr. Foster's interpretation of that statute and concluded that the trial court properly applied it to Mr. Foster. This Court cannot second guess that determination. *See Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." (cleaned up)); *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016). The Indiana Court of Appeals reasonably applied *Strickland* when it held that trial counsel's failure to challenge the evidence supporting Mr. Foster's habitual offender designation was not deficient performance. The Seventh Circuit has long held that "[c]ounsel is not ineffective for failing to raise meritless claims." *Warren v. Baenen*, 712 F.3d 1090, 1104 (7th Cir. 2013); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a

13

losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Mr. Foster is not entitled to relief on this claim.

## IV.
## Certificate of Appealability

"A state prisoner whose petition for a writ of habeas corpus is denied by a federal district court does not enjoy an absolute right to appeal." *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Instead, a state prisoner must first obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In deciding whether a certificate of appealability should issue, "the only question is whether the applicant has shown that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck*, 137 S. Ct. at 773 (citation and quotation marks omitted).

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." No reasonable jurist would disagree that the Indiana Court of Appeals reasonably applied federal law when it held that Mr. Foster's trial counsel did not perform deficiently and that there was sufficient evidence to convict him. And no reasonable jurist would disagree that his remaining claims are non-cognizable and/or procedurally defaulted. Therefore, a certificate of appealability is **denied**.

# V.
# Conclusion

Mr. Foster's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **denied**, and a certificate of appealability shall not issue.

Final Judgment in accordance with this decision shall issue.

**SO ORDERED.**

Date: 5/22/2023

                                                  James Patrick Hanlon
                                                  United States District Judge
                                                  Southern District of Indiana

Distribution:

BRUCE E. FOSTER
882248
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Sierra A. Murray
INDIANA ATTORNEY GENERAL
sierra.murray@atg.in.gov